## Shope Tax Assessment Case.

316

Argued April 14, 1969.  Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Ila Jeanne Sensenich,* for appellant.

*Henry B. Waltz, Jr.,* County Solicitor, for appellee.

OPINION BY MONTGOMERY, J., June 13, 1969:

Appellants William B. and Dorothy K. Shope, his wife, are the owners of property in the Township of Hempfield, Westmoreland County, Pennsylvania, which consists of 23.35 acres of land with a house and a horse barn erected thereon. It was assessed for tax purposes by the official assessors of that county for the year of 1968 at $23,550. On appeal to the Board for the Assessment and Revision of Taxes (Board) of Westmoreland County, the assessment was reduced to $18,-800. The owners, still feeling aggrieved by the reduced assessment and believing it to be excessive, unfair, unjust and unequal, petitioned the Court of Common Pleas of that county for a revision of same under the Act of May 21, 1943, P.L. 571, Art. VII, §704, as amended, 72 P.S. §5453.704. After a hearing on the petition the assessment was sustained and this appeal followed.

Lack of uniformity with other assessments in Westmoreland County is the basic issue, appellants contending that under the evidence the court erred in sustaining an assessment which bore a higher ratio of assessed value to fair market value than that which prevailed in the taxing district. The court found that the Board applies a ratio of 25% throughout the county and that the ratio of the $18,800 assessment of appellants' property to $90,000, which it found to be its

fair market value, was not in excess of the figures applied by the Board generally.

The finding of fair market value is supported by the record. Mrs. Shope testified without objection that she and her husband purchased the land in February, 1967, for $30,000 and constructed the residence thereon at a cost of $63,200, and are holding $5,000 due the contractor until he completely fulfills his contract, that the stable cost $6,800, and that they had spent about $500 for trees, seeds, and fencing, which they planted and built, or a total of approximately $100,500. Their real estate expert testified that in his opinion the property had a fair market value of $65,000. However, the real estate expert offered by the Board testified it was worth $95,000. The Board, over objections, also offered the testimony of two other men who had appraised the property for a mortgage. One of these men, Mr. Keim, director of the Greensburg Savings and Loan Association which had placed a loan on the property of $68,776, testified it had a fair market value of $99,776. The other man, Mr. Boyle, Sr., who regularly made appraisals for the bank, testified to $90,000 without the consideration of the barn, which had not been built at the time of his appraisal.

The qualifications of Mr. Keim and Mr. Boyle were not questioned. The only question now being raised is that their testimony should not have been considered because of the purpose of their appraisals, i.e., for a mortgage. *Park's Appeal*, 334 Pa. 193, 5 A. 2d 561 (1939),[1] relied on by appellants, is not authority for ruling inadmissible the testimony of such a witness.

---

[1] The other cases cited by appellants, *Pennsylvania's Northern Lights Shoppers City, Inc. Appeal*, 419 Pa. 31, 213 A. 2d 268 (1965); and *Buhl Foundation v. Board of Property Assessment, Appeals and Review*, 407 Pa. 567, 180 A. 2d 900 (1962), are not in point since they relate to improper methods of appraisal, not purpose.

The Supreme Court said in that case that it should be given, at page 196, A. 2d 562, "No *special* significance." (Emphasis supplied) However, in the present case both witnesses testified that, although they were appraising the property for a mortgage, their intentions were to appraise it at its fair market value. We find no merit in this argument. It was for the lower court to evaluate this testimony in the light that it was given, and by its opinion we note that it did so in the proper manner. We note also that this question was not raised by appellants in their exceptions to the trial judge's order dismissing their petition.

To establish lack of uniformity with other assessments in Westmoreland County appellants-owners offered the assessments of six other properties allegedly comparable to that of appellants, and followed this with the testimony of their expert appraiser as to the fair market value of those properties. The ratios of assessment to the fair market value of those properties based on the opinion of that witness was as follows: Eidemiller, 7.59%; Brisell, 16%; Reed, 7%; Burkett, 13.6%; Eisaman, 10%; Rinshagen, 10%; or an average ratio of about 9.17%. Based on the opinion of that expert of $65,000, as the market value of appellants' property, the ratio in their case would be about 29%.

In support of its assessment, which was offered in evidence as its prima facie case, the Board offered the testimony of William Wolosyn, a member of the Board, whose duties as such did not include the appraisal of property; nor was he a qualified real estate appraiser. He testified that the Board applied a ratio of 25% to fair market value to arrive at the assessment value, and over objections gave the figure, 24%, supplied by the Pennsylvania State Tax Equalization Board for Hempfield Township School District, as the ratio between market and assessed value in that area. This objection should have been sustained for the main

reason that such information is improper in cases of this nature, but also that it was limited to Hempfield Township. *Schenley Land Company v. Allegheny County Board of Property Assessment,* 205 Pa. Superior Ct. 577, 211 A. 2d 79 (1965); *LaRose Dwellings, Inc. v. Allegheny County Board of Property Assessment,* 205 Pa. Superior Ct. 587, 211 A. 2d 104 (1965).

Mr. Wolosyn, also over objections, identified three lists of properties in a major part but not all of Westmoreland County but considered by the court as "... for the purposes of this appeal ... the whole of this taxing district ...", compiled by a clerk in the office of the Board under his supervision, showing their assessed values and the selling price of same as taken from recorded deeds passing through the Board's office for transfer purposes. These transfers covered the period from 1960 to 1968. No exact average ratio was established from the figures on these lists by comparing the assessments with the selling prices (as evidenced generally by the documentary stamp thereon), but our examination of those figures for the individual properties, 364 in number, and calculations made therefrom show that average to be 24.8054%, although ratios as low as 10.1% and as high as 68.1% may be found[2] for individual properties.

In addition to the opinion of Mr. Boyle and Mr. Keim, previously mentioned, the Board offered the opinion of Mr. Levinson, a recognized expert, who gave his opinion of the fair market value of appellants' property as $95,000. Another Board member, Mr. Lesko, also testified, but he merely identified the aforesaid lists as having been prepared under his supervision also.

---

[2] The court en banc states in its opinion, "The under assessments revealed by the petitioners are indicative of the reason for the launching of a multimillion dollar, County wide reassessment program by the County Commissioners now in progress and should be completed within a year."

The manner of establishing the prevailing ratio of assessment to fair market value in a given taxing district is a difficult subject about which many opinions have been written. Article VIII, §1, of the Pennsylvania Constitution requires all taxes to be uniform on the same class of subjects within the territorial limits of the authority levying the tax. In applying this provision to the taxation of real estate, the ratio of assessed value to market value adopted by the taxing authority must be applied equally and uniformly to all real estate within the jurisdiction of the taxing authority. *McKnight Shopping Center, Inc. v. Board of Property Assessment,* 417 Pa. 234, 209 A. 2d 389 (1965).

In *McKnight,* an Allegheny County case, where under the established law assessments are to be 100% of market value, the property owner was held to be entitled to an assessment of less than 100% of market value because it had established that generally in that taxing district properties were assessed at less than 100%. Therein the property owner established the prevailing ratio by offering the testimony of qualified real estate experts as to the market value of several Allegheny County comparable properties in that district and the current assessments of the same properties, which demonstrated that its property was assessed at 88.5% of the market value as established by its expert witness, whereas the other properties used as a comparison were assessed at ratios of 57% and 76% of their market value. The Board, therein, relied on its assessment and offered no testimony to support it or to rebut the testimony offered by the property owner. For that reason it was held that the appellants had sufficiently established lack of uniformity and the order of the lower court sustaining the assessment was vacated. *Brooks Building Tax Assessment Case,* 391 Pa. 94, 137 A. 2d 273 (1958), cited in *McKnight,* was, ac-

cording to our research, the first case holding that lack of uniformity in tax assessment matters could be established by making comparisons with other specific properties in the taxing district, although *Harleigh Realty Co.'s Case,* 299 Pa. 385, 149 A. 653 (1930), indicated it might be done. Therefore, the method of proving lack of uniformity adopted by appellants in the present case is recognized by *McKnight.*

In *McKnight,* however, the Supreme Court has recognized another method of establishing the general ratio of assessment to market value, page 242, A. 2d 393, ". . . evidence regarding the ratios of assessed values to market values as the latter are reflected *in actual sales* of any other real estate in the taxing district for a reasonable period prior to the assessment date. Thus, for example, if competent evidence of an overall current ratio based on sales within the taxing district is available, it may be introduced." (Emphasis supplied) This was the method adopted by the Board in our present case when it introduced the three lists showing selling prices and assessments in a large part of Westmoreland County within a reasonable period prior to the assessment. We find no error in the statement of the lower court that such lists were sufficient to enable it to make a determination of the ratio prevailing in the entire county and admitting them into evidence. It was testified that they were compiled from Board records of the selling prices stated or reflected by documentary stamps in and on the actual deeds transferring the properties.

Subsequently, in *Massachusetts Mutual Life Insurance Company Tax Assessment Case,* 426 Pa. 566, 235 A. 2d 790 (1967), the principles enumerated in *McKnight* were reaffirmed. Therein the testimony of an economist, who had made a study of sales of real estate in that taxing district and compared them with assessments, was privileged to give the results of his

study, which was that the prevailing ratio seemed, at page 569, A. 2d 791, ". . . to cluster around ratios of 42% to 46%." The Board offered the testimony of real estate experts and a statistician who testified that the ratio was between 50% and 70%. The lower court found 44% to be the prevailing ratio and its order based on that finding was affirmed.

In *F. W. Woolworth Company Tax Assessment Case*, 426 Pa. 583, 586, 235 A. 2d 793, 795 (1967), the Supreme Court expressed its preference for ". . . a valid study of the ratio of assessed value to market value covering the entire taxing district . . .", to a determination based upon a few properties. However, it did not overrule *McKnight,* ruling that it could also be shown by the latter method.

Thus, the lower court had before it evidence based on two approved methods of establishing ratio, and it appears to have accepted the one for which our Supreme Court expressed preference, the overall comparison of sales with assessments over the entire taxing district.

The credibility of the witnesses and the weight to be given their testimony was for the trial judge, and since his findings and conclusions are supported by sufficient competent evidence and affirmed by the court en banc, we shall not disturb them.

The only error we find in the trial of this case was in the admittance of the ratio found to exist in Hempfield Township by the State Tax Equalization Board, and we hold it not to be prejudicial to appellants or cause for reversal for two reasons. First, it was of limited application, to Hempfield Township, whereas the court was seeking to determine the general ratio existing in the entire county. Second, the facts on which the Hempfield ratio as found by the State Tax Equalization Board were properly before the court as part of the lists of sales and assessments offered by

the Board to indicate the county ratio previously discussed, from which the same conclusion could be drawn.
Order affirmed.