In Re: Appeal of Cabot 95 Trust, Gerald W. Blakeley, Jr. and D. G. Wheeler, et al. From the Bucks County Board of Assessment Appeals, Bucks County, Pa., et al. Cabot 95 Trust, Appellant.

Argued October 5, 1976, before President Judge BOWMAN and Judges CRUMLISH, JR., WILKINSON, JR., MENCER, ROGERS and BLATT. Judge KRAMER did not participate.

*Edwin C. Angstadt, Jr.*, with him *Eastburn and Gray*, for appellant.

*Thomas J. Profy, III*, with him *George T. Kelton*, and *Begley, Carlin, Mandio, Kelton & Popkin*, for appellee.

OPINION BY JUDGE ROGERS, November 23, 1976:

This case illustrates the difficulty, if not impossibility, of achieving perfect uniformity in the assessment of real estate for local tax purposes. The appellants are individuals who, under the name of Cabot 95 Trust (hereinafter referred to as Cabot), own twenty parcels of real estate located in Middletown Township, Bucks County. The procedures for assessment applicable in Bucks County, a County of the Third Class, are those provided by the Fourth to Eighth Class County Assessment Law, Act of May 21, 1943, P.L. 571, *as amended*, Section 101 et seq., 72 P.S. §5453.101

et seq. This is so by reason of the Act of September 19, 1961, P.L. 1509, 72 P.S. §5347(b).[1]

The basis of Cabot's appeal of its 1975 assessments, first to the Board of Assessment and Revision of Taxes of Bucks County, then to the Court of Common Pleas and now to us, is its assertion that its properties have not been assessed uniformly with the assessment of other properties in Bucks County. It says that while the County Commissioners' predetermined ratio of assessment to fair market value of 25% has been applied in reaching the assessment of each of its properties, a lesser ratio has actually been applied on a wholesale basis to other properties in the County. At the hearing in the court below, in which the Township and School District participated as intervenors, Cabot depended principally upon the testimony of one John T. Welsh, a licensed real estate broker and appraiser, who said that he studied about 350 actual sales of property and concluded that the mean average ratio of assessed to actual market value used in Bucks County during the twelve month period from September 1973 to August 1974 was 15.72%. Cabot also depends on a part of a stipulation entered into between its counsel and counsel for the Board of Assessment and Revision of Taxes, and for the Township and School District reading as follows:

"7. The Board determined the values and assessments as of September 1, 1974 for the following properties to be:

| PARCEL NUMBER | MARKET VALUE | ASSESSMENT | ALLOCATION TO LAND | TO IMPROVEMENTS" |
|---|---|---|---|---|

[There followed under the respective headings the information from the tax records for each of Cabot's twenty properties.]

---

[1] We have been instructed in this regard by President Judge SATTERTHWAITE's opinion in *Silverstein v. Bucks County Board of Assessment and Revision of Taxes*, 23 Bucks Co. L. Rep. 301 (1973).

Obviously, Cabot's case was proceeding well in the hearing at the point when Mr. Welsh had concluded his testimony. This is because, as Judge SATTER-THWAITE points out in *Silverstein v. Bucks County Board of Assessment and Revision of Taxes, supra,* a taxpayer may agree that the market value is that recorded by the assessor and is not put in every case to provide independent evidence of the fair market value of his property, and because *Shope Tax Assessment Case,* 214 Pa. Superior Ct. 315, 257 A.2d 635 (1969), provides authority for proving the actual ratio of assessment to fair market value used in the County by the method used by Mr. Welsh.

However, Cabot also chose to call as a witness one Richard Brosius, the Chief Assessor of Bucks County, who stated that the Board of Assessment and Revision of Taxes had fixed as the fair market value of properties sold after September 1973 an amount equal to only 70% of sales prices. Mr. Brosius explained that this was done because he and his staff had earlier determined that properties which had not recently changed hands and whose market values had not been changed for assessment purpose, but whose actual value had increased, were in fact carried on the Board's books at market values equal to only 70% of their actual value. Therefore, in order to make the assessments of recently sold properties uniform with those of "older properties," the Board reduced its recorded figure for market value of properties lately sold to 70% of their consideration. Mr. Brosius testified that in his opinion all properties in Bucks County were assessed uniformly at 17.5% of their actual full fair market value and not at 25% of value as fixed by the Commissioners. This testimony, of course, carried with it the implication that the figures recorded by the Board and agreed to by stipulation by the parties as the market value of Cabot's properties in fact represent

only 70% of their actual full fair market value. The writer of this opinion has calculated the ratio of the assessment of Cabot's twenty properties to the fair market value on the assumption that the market value fixed by the Board was only 70% of actual full market value, and we have found that in every instance except one, the ratio of the assessment to 100% of the fair market value is indeed about 17.5%. The one exception is Parcel No. 22-57-8.3 which, by our calculation, is assessed at a ratio of 18.67%. We have attached to our opinion, but will not publish, our calculations which may be helpful to the court below in framing a new order which, for reasons we will shortly explain, is necessary.

At the conclusion of Mr. Brosius' testimony, counsel for the School District moved that the appeal be dismissed on the ground that Cabot had not carried its burden to prove that its properties were not uniformly assessed, but indeed by the testimony of Mr. Brosius had proved that they were assessed just as other properties in the county.[2]

Counsel for Cabot at the colloquy following the close of its case and the motion for dismissal stated that he was not prepared to go ahead on the issue of the fair market value of Cabot's properties because he had believed that the stipulation constituted an agreement between him and other counsel that the figures on assessor's books called "market value" meant the full fair market value of Cabot's properties, not some lesser amount.

---

[2] Doubtless astute counsel for the school district had in mind the principle that as between the standard of actual value and the standard of uniformity, uniformity must prevail. *Buhl Foundation v. Board of Property Assessments*, 407 Pa. 567, 570, 180 A.2d 900, 902 (1962); *Valley Forge Golf Club, Inc. Tax Appeal*, 3 Pa. Commonwealth Ct. 644, 649, 285 A.2d 213, 216 (1971).

In any event, the hearing was then closed and the court thereafter, by an able opinion of Judge GARB, granted the motion to dismiss Cabot's appeal. Judge GARB's opinion properly notes that it was Cabot's burden to show lack of uniformity, that at the conclusion of its case it had failed to do so, and that there existed no reason for further testimony from any of the parties as to the actual value of Cabot's properties.[3] At the conclusion of the hearing, as we have noted, Cabot's counsel stated that he was depending solely on the stipulation. He argues in this Court that we should remand the case so that Cabot may adduce evidence as to market values other than those in the stipulation. No such application having been made to the court below, the suggestion that we should remand the case raises an issue not raised below which we may not allow. Further, it is apparent that Cabot in preparing for the hearing could by merely inquiring of the Chief Assessor have ascertained how the assessments were made and what the Assessor's market value figure in fact represented; that is, 70% of the Assessor's and the Board's opinion of full market value.

The decision of the court below that the appellant's properties had not been assessed without regard to principles relating to uniformity was, in our opinion, a correct one. However, the hearing judge overlooked the duty imposed upon courts hearing assessment appeals to determine from the evidence submitted at the hearing "what ratio was used generally in the taxing district" and to "direct the application of the ratio so found to the value of the property" which is the subject of the appeal. Section 7 of the Fourth to

---

[3] The Township and School District were prepared to show that Cabot's properties were worth more than the "market value" amounts carried on the Board's records. Sensing the direction of the wind, they did not press their right to adduce this evidence.

Eighth Class County Assessment Law, 72 P.S. §5453.704. Burdensome as it unfortunately may be, the trial judge should have found what ratio was used generally in Bucks County and then applied that ratio to the full market value of each of Cabot's properties and fixed the assessments accordingly. The court below made no findings. Mr. Welsh, as we have noted, testified to a ratio of 15.72%; Mr. Brosius stated that the ratio used was 17.5% of full market value, and, of course, the Court has before it the ratio predetermined by the Commissioners of 25% of market value.

We gather from the opinion of the court below that it was rather inclined to accept Mr. Brosius' testimony that all properties in Bucks County are assessed not at the rate of 25% of full market value but at the rate of 25% of 70% of full market value, or 17.5% of full market value.

We accordingly believe that the following is an appropriate order.

### ORDER

AND Now, this 23rd day of November, 1976, it is ordered that the order of the hearing judge made September 1, 1975, be and the same hereby is vacated and the record remanded for findings and an order complying with Section 7 of the Fourth to Eighth Class County Assessment Law, 72 P.S. §5453.704.[4]

---

[4] Judge SATTERTHWAITE's opinion and order in *Silverstein v. Bucks County Board of Assessment and Revision of Taxes, supra,* provides a perfect model for findings and order in this kind of case.