In Re: Appeal of Mt. Lebanon, Pa. From the 1976-77-78 Triennial Assessment of the Board of Property Assessment, Appeals and Review Upon the Property at 131 Markham Drive, in the Municipality of Mt. Lebanon, Pa. James W. Stevenson, Jr. and Frances M. Stevenson, Appellants.

In Re: Appeal of Mt. Lebanon, Pa. From the 1976-77-78 Triennial Assessment of the Board of Property Assessment, Appeals and Review Upon the Property at 131 Markham Drive, in the Municipality of Mt. Lebanon, Pa. Mt. Lebanon, Pennsylvania, Appellant.

In Re: Appeal of Mt. Lebanon, Pa. From the 1976-77-78 Triennial Assessment of the Board of Property Assessment, Appeals and Review Upon the Property at 131 Markham Drive, in the Municipality of Mt. Lebanon, Pa. Board of Property Assessment, Appeals and Review, Appellant.

Argued May 6, 1980, before President Judge CRUMLISH and Judges WILKINSON, JR., MENCER, ROGERS, BLATT, CRAIG and WILLIAMS, JR. Judge MACPHAIL did not participate.

*John Michael Studeny*, with him *Guy L. Warman*, *Guy L. Warman and Associates*, for James W. Stevenson, Jr. and Frances M. Stevenson.

*James H. Roberts*, with him *Edwin L. Klett*, *Eckert, Seamans, Cherin & Mellot*, for Mt. Lebanon, Pennsylvania.

*John M. Silvestri*, for the Board of Property Assessment, Appeals and Review.

OPINION BY JUDGE BLATT, July, 2, 1980:

This is a tax assessment appeal by James and Frances Stevenson (taxpayers) from the Court of Common Pleas of Allegheny County. The municipality of Mt. Lebanon (Mt. Lebanon) and the Allegheny County Board of Property Assessment, Appeals and Review (Board) have cross-appealed, and the appeals have been consolidated here for argument and disposition.

The taxpayers are owners of and live on the property at 131 Markham Drive in Mt. Lebanon. In 1975, the tax assessor of Allegheny County fixed the assessment on the property at $24,000 for the triennial period 1976-77-78. The taxpayers appealed from this assessment to the Board, which, after a hearing, reduced the assessed valuation to $16,000. Mt. Lebanon then appealed the Board's action to the court of common pleas, where the taxpayers intervened. A trial was held, after which the court held that the fair market value of the property as of January 1, 1976, was $44,-000 and that application of the assessment ratio of 50 percent in effect within the taxing district meant an assessment of $22,000.

As to the fair market value, the taxpayers argue that Mt. Lebanon failed to meet its burden because its

expert witness was not competent to testify as to the value of the subject property. This assertion is based on the fact that the witness' inspection was made more than one and one-half years after the valuation date and did not include an interior inspection. Our Supreme Court has stated, however, that:

[I]n all such questions of competency there is no fixed or absolute standard; the witness is required to have only such knowledge of the value of the property *as could be reasonably expected in the particular case.* . . .

*Stevenson v. East Deer Township,* 379 Pa. 103, 106, 108 A.2d 815, 816 (1954) (emphasis added). Here, the Board reached its assessment decision and Mt. Lebanon appealed therefrom in February 1977. The expert's inspection took place in the summer 1977, but it appears that this minor delay was occasioned by the taxpayer's refusal to allow an interior inspection of the subject property. Indeed, a motion by Mt. Lebanon to allow entry was denied by the court on June 17, 1977. Moreover, the taxpayers, after successfully opposing the motion to allow entry, are hardly in a position to attack the expert's valuation as not including an interior inspection. Finally, the taxpayer's own testimony supplied the missing details as to the interior and, in most instances, confirmed the expert's necessary speculation thereon. We believe, therefore, that the expert's testimony was competent. And when his valuation of $68,000 is compared with the taxpayers' valuation of $36,000, it is clear that the trial court, as fact-finder, was entitled to find a fair market value of $44,000.

The taxpayers also argue that the court below erred in excluding testimony and evidence directed to the issue of uniformity of assessment. With this argument, we agree. The Board purports to assess real estate at 50 percent of its fair market value.

[Our Supreme Court has] pointed out, however, regardless of the purported percentage generally used by the taxing authority, that where a taxpayer shows that other properties in the taxing district are assessed at less than the generally applied ratio of assessed to market value, he is entitled to have his assessment reduced to reflect the same ratio of assessed to market values as actually applies to other properties.

*McKnight Shopping Center v. Board of Property Assessment,* 417 Pa. 234, 239, 209 A.2d 389, 391-92 (1965). Here, the taxpayers attempted to testify as to a study they had made of the common level ratio of assessments to market value in several other parts of Allegheny County. The taxpayers also attempted to present the testimony of one Gordon Mulleneaux and a report prepared by a county government committee on which he served dealing with assessment practices and policies and containing all real property sales in Allegheny County and the ratio of assessment to sale prices in 1974 and 1975. The court rejected this testimony and evidence, explaining in its opinion that the study was not representative of the district because it referred to only five of the 131 municipalities therein and that the Committee report was submitted to the State Tax Equalization Board and was therefore inadmissible. In so concluding, however, we believe that the court below erred.

In *Brook Building Tax Assessment Case,* 391 Pa. 94, 137 A.2d 273 (1958), our Supreme Court held that the taxpayer had met its burden of proving nonuniformity "by producing evidence of the market value of its property and of similar properties of the same nature in the neighborhood and by proving the assessment of each of those properties and the ratio of assessed value to actual or market value." *Deitch Co. v. Board of Property Assessment,* 417 Pa. 213, 218, 209

A.2d 397, 400 (1965). Later in *Deitch, supra,* the Court elaborated:

> The evidence supplied by the taxpayer in Brooks illustrates one method by which a taxpayer can meet his burden of proving a lack of uniformity, but we do not consider it to be the only method. It would be equally satisfactory to produce evidence regarding the ratios of assessed values to market values as the latter are reflected in actual sales of any other real estate in the taxing district for a reasonable period prior to the assessment date. Thus, for example, the taxpayer's expert witness or witnesses could select a number of recent representative sales and offer testimony with respect to such sales as proof of the ratio in the taxing district. We do not, of course, mean to suggest that the taxpayer must produce evidence with respect to every recent sale in the district. Furthermore, any other competent evidence of an overall current ratio based on sales within the taxing district which is available may be introduced.

417 Pa. at 223, 209 A.2d at 403; *see McKnight Shopping Center, supra; Calcagni v. Board of Assessment Appeals,* 38 Pa. Commonwealth Ct. 525, 394 A.2d 663 (1978); *Appeal of Cabot 95 Trust,* 27 Pa. Commonwealth Ct. 214, 365 A.2d 1332 (1976); *Valley Forge Golf Club, Inc. Tax Appeal,* 3 Pa. Commonwealth Ct. 644, 285 A.2d 213 (1971). We believe, therefore, that the proffered evidence should have been admitted. Furthermore, while it is true that reports of the State Tax Equalization Board (STEB) may not be used in a tax assessment appeal, *Hoffman Tire, Inc. Tax Appeal,* 35 Pa. Commonwealth Ct. 395, 387 A.2d 134 (1978), the record does not support the conclusion that the report in issue here was prepared by or for the

STEB so as to bring it within the prohibition noted in *Hoffman, supra.*

The taxpayers also argue that the court below erred in failing to consider the assessments on comparable properties within their neighborhood. Again, we agree. Mt. Lebanon's expert testified to the fair market value of several neighboring properties, whose accuracy was stipulated by the parties, were later introduced by the taxpayers in addition to the assessments on a number of other properties in the neighborhood. The court refused to consider this evidence because the owner did not establish the fair market value of any of the properties. While we agree with Mt. Lebanon's argument in its cross-appeal that "raw" assessments are not probative and should be excluded, we note that, as to the several comparable properties, fair market value was established by Mt. Lebanon's expert. Comparison of these market values to the assessments on the property, as the taxpayers assert, suggests a common level ratio lower than the purported 50 percent. Therefore, while the assessments by themselves were not probative, where the market values had been established, the lower court should have considered the evidence of nonuniformity.

Finally, Mt. Lebanon insists that this evidence, as well as the taxpayers' study of the five municipalities, is too narrow to be probative. It cites *Pittsburgh Miracle Mile v. Board of Property Assessment,* 417 Pa. 243, 247, 209 A.2d 394, 396 (1965), for the proposition that "[t]he pertinent ratio is that which prevails in the entire taxing unit, not merely in a portion of the district." We note, however, that in *Pittsburgh Miracle Mile* the ratio figures pertained to only *one* municipality within the district. Therefore, although the neighborhood figures by themselves might not establish the common level ratio in the taxing district, we believe that this evidence together with the taxpayer's

study and Mulleneaux's county-wide study could, if accepted, establish the common level ratio.

We must therefore reverse the court of common pleas and remand the record.

## ORDER

AND Now, this 2nd day of July, 1980, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is hereby reversed and the record is remanded in accordance with the foregoing opinion to allow the Appellants the opportunity to present evidence concerning the assessed values of comparable properties in the vicinity of the Appellants' property and to allow the Appellants the opportunity to present evidence concerning the common level ratio of assessments to market value on properties in other parts of Allegheny County.

---

DISSENTING OPINION BY JUDGE MENCER:

I respectfully dissent.

The majority properly concludes that "the trial court, as factfinder, was entitled to find a fair market value of $44,000" for the property in question. The majority correctly states that the trial court applied to the fair market value of the property "the assessment ratio of 50 percent in effect within the taxing district." Yet, the majority reverses the trial court and remands the record for the presentation of additional evidence.

It is my understanding that all properties within the taxing district are assessed at 50 percent of their fair market value. If this is true, there is no uniformity problem. It is not my understanding that some properties are assessed at 10 percent, some at 30 percent, and others at 50 percent.

The problem, if there is one, lies with fair market value determinations. Thus, if two properties located

514

next to or near each other have comparable worth but appreciably different assessments, the explanation is simply that the fair market value determination for one of the properties is more realistic or "fair" than such a determination for the other property. Since both are assessed at a 50-percent ratio, a question of uniformity in that regard cannot arise.

Here, we should affirm the trial court, since we have concluded that it was entitled on this record to find a fair market value of $44,000 and that it applied thereto the assessment ratio of 50 percent in effect within the taxing district.

We must be mindful that here we are passing on the correctness of the assessment of the property of James and Frances Stevenson and not the correctness of their neighbors' assessments.

Judge WILLIAMS, JR. joins in this dissent.